[No. 24066.   Department One.   January 7, 1933.]

UNITED CIGAR STORES COMPANY OF AMERICA, *Appellant,*
v. THE FLORENCE SHOP *et al., Respondents.*[1]

*Bronson, Jones & Bronson* and *W. L. Grill,* for appellant.

*Stern & Stern,* for respondents.

HOLCOMB, J.—This is an action to recover $1,700 for rental claimed to be due appellant from The Florence Shop, a corporation, and to establish a land-

[1]Reported in 17 P. (2d) 871.

lord's lien upon moneys obtained from a special sale by the assignees for the benefit of creditors of The Florence Shop, of the goods, wares and merchandise which had been kept upon the leased premises.

On December 1, 1926, appellant, as lessor, entered into a written lease with The Florence Shop, a corporation, as lessee, under the terms of which the lessee leased for a term of four years, commencing February 1, 1927, the second floor of a certain described building in Seattle, Washington, at a monthly rental of $850, payable in advance on the first day of each and every month. The lessee took possession of the premises and occupied them under the terms of the lease until May 15, 1931, on which date it executed an assignment for the benefit of its creditors to respondent Cohen.

On May 16, 1931, the assignee removed all the goods, wares and merchandise of The Florence Shop from the leased premises to other premises, and during a period of about ten days thereafter he sold the merchandise at a retail sale to third parties. On June 18, 1931, appellant started this action, by which it sought a judgment against The Florence Shop for rent due under the lease for the months of June and July, 1931, and to establish a landlord's lien therefor upon the proceeds of the sale of the goods, wares and merchandise in the hands of the assignee.

On July 2, 1931, Cohen, the assignee, was appointed receiver in the state court of The Florence Shop, and immediately took into his possession, as receiver, all assets in his possession as assignee of The Florence Shop, including funds derived from his assignee's sale of the goods, wares and merchandise.

The trial court found that The Florence Shop is a Washington corporation; that, on or about May 15,

1931, that corporation made an assignment for the benefit of its creditors to Cohen, who qualified as such assignee and continued to act as such until July 2, 1931, when he was duly appointed receiver of the corporation; that, on July 3, 1931, he qualified as such receiver, and ever since has been and now is the duly qualified and acting receiver of The Florence Shop.

The court then found that the lease had been entered into as heretofore recited between the corporation and appellant, under which the corporation took and retained possession of the premises and paid the rental accruing under the lease until it defaulted in the rental for the months of June and July, 1931; that, at the time of the assignment by that corporation, it owned certain goods, wares and merchandise located and kept on the premises described in the lease and in the complaint; that, on about May 16, 1931, Cohen, as assignee, removed all of the goods, wares and merchandise from the premises, and within ten days thereafter sold the same at assignee's special sale for cash to third parties; that he has not any of the goods, wares or merchandise kept on, or contained in, the premises by The Florence Shop; that more than ten days elapsed after the removal of such goods, wares and merchandise before the institution of this action by appellant, but that this action was brought within sixty days after the removal of such goods, wares and merchandise; that, as receiver, Cohen has the funds remaining from the sale made by him as assignee; that there is due to appellant from The Florence Shop $1,700 rent for the months of June and July, 1931; that, in addition to the goods, wares and merchandise above mentioned, there were certain furniture and fixtures in the premises which were sold by Cohen, as assignee, upon the agreement that the

proceeds thereof in the sum of $175 should be subjected to the landlord's lien of appellant.

Upon those findings, the trial court concluded that appellant is not entitled to a landlord's lien upon the goods, wares and merchandise of The Florence Shop, a corporation, nor upon the proceeds from the sale thereof; that appellant is entitled to a landlord's lien in the stipulated sum of $175, and is entitled to a claim against Cohen, as receiver of the corporation, in the sum of $1,700, to be preferred to the extent of $175 and general as to the balance thereof. Judgment was entered accordingly.

The case is here on the findings, conclusions and judgment.

On appeal, the sole contention of appellant is that it is entitled to a landlord's lien upon the proceeds derived from the special assignee's sale of the goods, wares and merchandise to third parties, where such goods, wares and merchandise were removed from the premises and sold within ten days thereafter to third parties, and suit was not instituted by the landlord within ten days after the removal of the personal property from the premises in question, but was begun within two months after the rental became due.

Our present landlord's rental lien statutes read:

"Any person to whom rent may be due, his executors, administrators, or assigns, shall have a lien for such rent upon personal property which has been used or kept on the rented premises by the tenant, except property of third persons delivered to or left with the tenant for storage, repair, manufacture, or sale, or under conditional bills of sale duly filed, and such property as is exempt from execution by law. Such liens for rent shall be paramount to, and have preference over, all other liens except liens for taxes, general and special liens of labor, and liens of mortgages duly recorded prior to the tenancy. Such liens shall not be

for more than two months' rent due or to become due, nor for any rent or any installment thereof which has been due for more than two months at the time of the commencement of an action to foreclose such liens; no writing or recording shall be necessary to create such lien; and if such property be removed from the rented premises and not returned to the owner, agent, executor, administrator, or assign, said lien shall continue and be a superior lien on the property so removed for ten days from the date of its removal, and said lien may be enforced against the property wherever found. In the event the property contained in the rented premises be destroyed by fire or other elements, the lien shall extend to any money that may be received by the tenant as indemnity for the destruction of said property, nor shall the lien be lost by the sale of the said property, except merchandise sold in the usual course of trade or to purchasers without notice of the tenancy. The provisions of this act shall not apply to, nor shall it be enforced against, the property of tenants in dwelling-houses or apartments or any other place that is used exclusively as a home or residence of the tenant and his family." Rem. Rev. Stat., § 1203-1.

"Said lien may be enforced in the same manner as the foreclosure of a chattel mortgage in the superior court of the county in which the property or any portion thereof is situated." Rem. Rev. Stat., § 1203-2.

Appellant frankly states that, after determined effort, it has failed to find any authority upon the point in question, as our statute is, at least to some degree, original.

The controversy chiefly devolves upon that portion of § 1203-1, *supra,* reading:

" . . . and if such property be removed from the rented premises and not returned to the owner, agent, executor, administrator, or assign, said lien shall continue and be a superior lien on the property so removed for ten days from the date of its removal, and said lien may be enforced against the property wherever found."

It is argued that the ten days limitation is intended to apply only where the property leaves the premises and passes out of the possession of the owner, his agent, executor, administrator or assigns; that such a construction is reasonable, and gives the landlord a ten-day period to pursue his lien against the property in the hands of third parties.

The statute says that, if the property be removed from the rented premises and not returned to the owner, etc., the lien shall continue to be a superior lien on the property so removed for ten days from the date of its removal and be enforced against the property wherever found. Plainly, this provision gives a lien against the specific property, when removed, in the hands of third parties, if asserted and the property pursued, but gives no lien against the proceeds thereof against the seller. The next provision gives a lien upon insurance proceeds, only.

A lien is strictly a creature of the statute, and without such creation does not exist. At common law, a landlord has no lien for rent, either on crops or chattels. 16 R. C. L. 975; *Chute v. Brown,* 103 Wash. 364, 174 Pac. 438.

When the limit fixed by the statute for the duration of the lien has passed, the lien ceases to exist, and is not thereafter enforcible. *Peterson v. Dillon,* 27 Wash. 78, 67 Pac. 397; *City Sash & Door Co. v. Bunn,* 90 Wash. 669, 156 Pac. 854, Ann. Cas. 1918B, 31; *Culp v. McMehan,* 123 Wash. 499, 212 Pac. 1069.

Appellant asserts its position is sustained by our decision in *Seattle Cabinet Works v. Nordby Hat Shops,* 140 Wash. 140, 248 Pac. 78. That was an action in which the landlord sought to enforce a preferred claim against the receiver of the tenant, just as here. There, also, the tenant had originally made an assignment for the benefit of creditors and

the landlord filed a preferred claim with the assignee. Thereafter, a receiver was appointed for the tenant, with whom the landlord filed its preferred rental claim within two months after the rental in question became due. The court there held that the property was in *custodia legis* from the date of the assignment, and that the landlord's lien was enforcible as a preferred claim.

In the cited case, however, as was said by this court:

"The court did not make a specific finding of fact that this was a common-law assignment. No question has been raised as to the power of a corporation to make either a common-law assignment or a statutory assignment, and every presumption must be in favor of the correctness of the court's order. Since under a common-law assignment the property would not have been in *custodia legis,* we must presume that this was a statutory assignment, otherwise the court would have held that the claim was lost by reason of failure to bring suit within the two months period."

Although the court made no finding in this case as to whether the assignment for the benefit of creditors was a statutory or a common law assignment, it did hold and conclude that appellant did not have a preferred lien on the assets of the insolvent corporation as in *custodia legis,* from the time of the assignment. Hence, the court must have found the assignment to have been a common law assignment. Under our state insolvency assignment acts, from the beginning, we have held that an insolvent corporation in this state may make a common law assignment, but not a statutory assignment. *Nyman v. Berry,* 3 Wash. 734, 29 Pac. 557; *McKay v. Elwood,* 12 Wash. 579, 41 Pac. 919; *Cerf, Schloss & Co. v. Wallace,* 14 Wash. 249, 44 Pac. 264.

Consequently, in the absence of direct findings and conclusions to the contrary, it must here be presumed

274

that the assignment made by the insolvent corporation was one executed within the law, and was a common law assignment.

The judgment of the trial court was right and is affirmed.

TOLMAN, C. J., MITCHELL, MILLARD, and PARKER, JJ., concur.